IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-1118-D |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, John Walker, seeks judicial review of the Social Security Administration's denial of his application for supplemental security income benefits (SSI) and disability income benefits (DIB). United States District Judge Timothy D. DeGuisti referred this matter for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

**I.    Procedural History**

On October 5, 2011, Plaintiff protectively filed applications with the Social Security Administration (SSA) for DIB and SSI, alleging a disability onset date of October 31, 2008. *See* Administrative Record (AR) [Doc. No. 11] 116-19, 120-25. The SSA denied these applications both initially and on reconsideration. AR 61-65, 66-69, 76-78, 79-81. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision and the Appeals Council declined Plaintiff's request for review. AR 1-5, 6-7. This appeal followed.

**II.    The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-

1

step sequential evaluation process); 20 C.F.R. §§ 404.1520, 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 13. At step two, the ALJ found Plaintiff to have the following severe, medically-determinable impairments: diabetes mellitus, hypertension, major depressive disorder without psychotic features, and personality disorder not otherwise specified. AR 15.[1]

At step three, the ALJ concluded Plaintiff's impairments neither meet nor medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. AR 15-16. Finding Plaintiff's complaints of mental disability not fully credible, the ALJ assessed his residual functional capacity (RFC), finding Plaintiff could:

> perform the full range of medium work as defined [by] 20 CFR 404.1567(c) and 416.927(c) except that the claimant has the following additional non-exertional restrictions and limitations: He can understand, remember, and carry out simple and detailed (not complex) instructions and tasks only; and can no more than occasionally interact with co-workers, supervisors, and the general public.

AR 16. At step four, the ALJ determined Plaintiff is unable to perform any of his past relevant work as a commercial artist, technical writer, documentation specialist, draftsman, web designer, systems analyst, or real estate analyst. AR 19-20. Relying on the testimony of a vocational expert (VE) at step five, the ALJ, considering Plaintiff's age, education, work experience, and RFC, concluded there are jobs existing in significant numbers in the national economy that Plaintiff is able to perform including the representative jobs of floor cleaner, hand packer, and cleanup worker. AR 20-21. Accordingly, the ALJ found Plaintiff is not disabled for purposes of the Social Security Act. AR 21.

---

[1] The ALJ further found Plaintiff to have the following non-severe, medically-determinable impairments: isolated episodes of acute sinusitis, a single episode of right-lobe pneumonia requiring surgical correction, and a single episode of symptomatic gallstones requiring surgical corrections. AR 14. The ALJ found certain of Plaintiff's claimed impairments to be non-medically-determinable: carpal tunnel syndrome, arthritis, and ADHD. AR 13.

2

**III.     Plaintiff's Claims**

Plaintiff raises the following claims of error: (1) the ALJ failed to derive a proper RFC; and (2) the credibility analysis was improper. *See* Plaintiff's Brief [Doc. No. 14] at 11, 14.

**IV.     Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court does consider whether the ALJ followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V.     Analysis**

    **A.     The ALJ Reasonably Evaluated Plaintiff's Complaints of Mental Disability and Substantial Evidence Supports the ALJ's RFC**

Plaintiff first contends the ALJ's RFC determination is flawed, arguing the ALJ's recitation of the medical evidence is one-sided and does not take into account the evidence as a

whole, in violation of Social Security Regulation (SSR) 96-8. *See* Plaintiff's Brief at 11-14. Plaintiff insists the ALJ "fail[ed] to discuss the evidence that supports [Plaintiff's] claims," including mental-health records showing his mood was often depressed, anxious, and irritable, and that Plaintiff often presented with poor hygiene and exhibited angry, hostile, and inappropriate behavior. *See* Plaintiff's Brief at 12. Plaintiff further insists the record evidence clearly shows his ability to respond appropriately to supervision, coworkers, and usual work situation has been severely impaired. *Id.* at 13. In addition, Plaintiff argues the ALJ improperly ignored the Global Assessment Function (GAF) score of thirty-five[2] assessed by Jahangir H. Ghaznavi, M.D., which Plaintiff contends constitutes persuasive evidence of disability. *Id.* at 14.

In response, Defendant maintains the ALJ's RFC was supported by substantial evidence. *See* Defendant's Brief at 13. Defendant insists the fact that the ALJ considered the GAF score is evident from the ALJ's reference to the exhibit containing Dr. Ghaznavi's notes. *Id.* at 14, *citing* AR 18 (*citing* Ex. 18F). Defendant further emphasizes that Dr. Ghaznavi did not explain how he calculated the rating or how it impacted Plaintiff's functional abilities, particularly as they pertain to Plaintiff's ability to work. *Id.* In addition, the record indicates Dr. Ghaznavi derived

---

[2] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue* 695 F.3d 1156, 1162 n.1 (10th Cir. 2012). "Its purpose is to allow clinicians to plan treatment, measure its impact, and predict its outcome." *Kearns v. Colvin*, __ F. App'x __, 2015 WL 8479681, *3 (10th Cir. Dec. 10, 2015) (unpublished) (*citing* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*, 32 (4th ed. Text Revision 2000)). A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at time illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child beats up younger children, is defiant at home, and is failing at school)." *Keyes-Zachary*, 695 F.3d at 1162 n.1. "In the most recent addition of the manual, the American Psychiatric Association dropped the GAF scale 'for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.'" *Kearns*, __ F. App'x __, 2015 WL 8479681, *3 n.2 (*quoting* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)).

the rating after Plaintiff reported he had an upcoming court date, was off his medications, and was experiencing auditory hallucinations, a symptom not found anywhere else in the medical records. *Id.*, *citing* AR 671-72. Defendant further points to the seeming inconsistencies between the GAF score and the generally positive findings reflected in Dr. Ghaznavi's various treatment notes, which indicate Plaintiff was typically cooperative, with a neat and clean appearance and logical thought processes. *Id.* Defendant argues that under these circumstances, the absence of specific ALJ discussion of the GAF score does not warrant remand. *Id.*

Review of the ALJ's decision easily refutes Plaintiff's charge that the ALJ was improperly selective in his analysis of the medical evidence, ignoring those portions that did not support his conclusion. *See* Plaintiff's Brief at 12. In it, the ALJ expressly noted a January 2012 consultative psychological evaluation showing Plaintiff exhibited signs of depression and anxiety that yielded a diagnosis of mood disorder. AR 18. The ALJ observed "no treating or evaluating medical or psychiatric specialist (physician or psychologist) has assessed [Plaintiff] as suffering totally disabling physiological or psychiatric impairment." AR 19. In addition, the ALJ discussed Plaintiff's participation in "ongoing outpatient psychiatric therapies consisting of psychiatric treatments, counseling and psychotropic medication management secondary to the diagnosis of recurrent major depressive disorder without psychotic features and personality disorder." *Id.* The ALJ noted "ongoing psychiatric notes and psychiatric reports of [Plaintiff's] treating and evaluating psychiatrists and other mental health specialists have persistently shown him to exhibit depressed/labile mood and affect, but to otherwise possess good overall psychiatric functions." *Id.* This accurately summarizes the medical evidence of record.

Plaintiff did not seek out or begin receiving mental health treatment until March 2012, six months after filing his applications for DIB and SSI. AR 430-43. At Plaintiff's first

appointment with Dr. Ghaznavi, the doctor noted Plaintiff exhibited poor hygiene; restless motor activity; rapid and pressured speech; depressed and anxious mood; and labile affect; but cooperative interaction; average judgment; coherent and tangential thought patterns; and the absence of delusions, hallucinations, and either suicidal or homicidal ideation. AR 426-27. Dr. Ghaznavi placed Plaintiff on several medications at this time including Celexa for depression. *Id.* One month later, on April 12, 2012, Dr. Ghaznavi noted Plaintiff was not medication compliant and exhibited pressured speech; labile affect; and depressed, anxious, and irritable mood; but continued to present a neat and clean appearance; intact and oriented thought processes; cooperative interaction; and the absence of delusions or hallucinations. AR 428, 645.

On May 17, 2012, Plaintiff reported for the first time that he was taking his medications as prescribed. AR 653. His speech had improved to normal; his mood was within normal limits; and his affect appropriate. *Id.* Five months later, on October 11, 2012, Plaintiff remained medication compliant; his mood and speech continued to be within normal limits and his affect appropriate. AR 669. On February 5, 2013, the date of the GAF assessment, Plaintiff informed Dr. Ghaznavi he was no longer taking his medications, that he had a "court date coming up," and was having "[t]rouble w/ court." *Id.* at 671-72. Plaintiff reported he angered easily, was very irrational, experiencing mood swings, and hearing voices. *Id.* at 671. Despite this, Dr. Ghaznavi noted Plaintiff had a neat and clean appearance; was "oriented in all spheres"; and exhibited normal speech, logical thought processes, coherent associations, adequate memory, average judgment and insight, and adequate attention and concentration. *Id.* Plaintiff's mood and affect were once again depressed and labile, however. *Id.*

Because it was based on a one-time examination, Plaintiff makes much of the ALJ's reference to the February, 2012 report of Pete Bullock, M.D., Plaintiff's primary care physician,

6

who described Plaintiff as being oriented, able to understand his medical conditions and communicate normally. *See* Plaintiff's Brief at 12, *citing* AR 18. The ALJ did not base his decision on this one report, however, but provided a thorough analysis of Plaintiff's reported symptoms, AR 17, as well as the medical records and opinion evidence.[3] AR 18-19.

Plaintiff next cites *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004), for the proposition that a GAF score of thirty-five constitutes "persuasive evidence of disability," evidence he contends the ALJ improperly ignored. *See* Plaintiff's Brief at 14. *Lee* is readily distinguishable, however. After first noting that "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work," the Tenth Circuit reasoned "[a] GAF score of fifty or less, however, does suggest an inability to keep a job," and held, therefore, that "[i]n a case like this one, *decided at step two*, the GAF score should not have been ignored." *Lee*, 117 F. App'x at 678 (emphasis added) (*citing Eden v. Barnhart*, 109 F. Spp'x 311, 314 (10th Cir. 2004) (unpublished)).[4] Here, unlike in *Lee*, the ALJ concluded Plaintiff's major depressive disorder constituted a severe impairment at step two and proceeded through the sequential analysis, ultimately deciding the case at step five. AR 15.

There is no evidence the ALJ ignored Plaintiff's GAF score in any event. While "[t]he record must demonstrate that the ALJ considered all of the evidence, . . . an ALJ is not required to discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted); *see Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (stating that there is no requirement that an ALJ discuss every piece of evidence; an ALJ need

---

[3] In addition, as discussed in the next section, the ALJ engaged in a credibility analysis in order to resolve apparent conflicts between the symptoms attested to in various reports by Plaintiff and his mother on the one hand (Exs. 3E, 4E, 9E), and the clinical and diagnostic evidence as well as Plaintiff's own hearing testimony on the other. AR 17-19.

[4] This and any other unpublished dispositions are cited pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

only discuss "the evidence supporting his decision," "uncontroverted evidence he chooses not to rely upon," and "significantly probative evidence he rejects."). Although an ALJ should consider GAF ratings along with all the other relevant evidence in assessing a claimant's RFC, the ratings do not specify particular work-related limitations or even necessarily relate to the ability to hold a job. *See Davidson v. Colvin*, 596 F. App'x 675, 681 (10th Cir. 2014) (unpublished); *Luttrell v. Astrue*, 453 F. App'x 786, 791 n.4 (10th Cir. 2011) (unpublished). Thus, "'[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy,'" and failure to "expressly recite or reconcile" a low GAF score "does not constitute error or take away from the substantial evidence supporting the ALJ's decision." *Kearns*, __ F. App'x __, 2015 WL 8479681, *3 (10th Cir. Dec. 10, 2015) (*quoting Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

Furthermore, because Dr. Ghaznavi did not tie Plaintiff's GAF score to his ability to work, the ALJ's failure to rely on Plaintiff's GAF score in assessing the RFC was not error. *See Zachary v. Barnhart*, 94 F. App'x 817, 819, 2004 WL 790300, at *2 (10th Cir. 2004) (unpublished) ("Although the ALJ did not discuss [claimant's] GAF rating in his RFC determination, he was not required to do so" where the physician who assessed the score neither explained the reason for the rating nor indicated claimant was unable to work); *Cainglit v. Barnhart*, No. 03-7004, 85 F. App'x 71, 75 (10th Cir. Dec. 17, 2003) ("In the absence of any evidence indicating that [the mental health evaluators] assigned these GAF scores because they perceived an impairment in [claimant's] ability to work, the scores, standing alone, do not establish an impairment seriously interfering with [claimant's] ability to perform basic work activities."). Under these circumstances, the absence of specific discussion about Plaintiff's GAF score by the ALJ does not warrant remand. *See Harper v. Colvin*, 528 F. App'x 887, 891-

92 (10th Cir. 2013) (unpublished) (holding absence of ALJ discussion about a psychiatrist's GAF rating was not reversible error, where the ALJ considered the psychiatrist's treatment and the ALJ's RFC finding was supported by substantial evidence); *Atkinson v. Astrue*, 389 F. App'x 804, 808 (10th Cir. 2010) (unpublished) (holding ALJ's failure to discuss claimant's GAF score in his written decision was not reversible error where physician "offered no explanation as to how she calculated the [GAF] score or how it impacted [the claimant's] functional abilities" and the ALJ discussed the other aspects of a physician's report).

### B. The ALJ Reasonably Found Plaintiff's Complaints of a Disabling Psychiatric Disorder Not Fully Credible

Plaintiff next argues the ALJ did not perform a proper credibility analysis in rejecting his subjective complaints of limitations resulting from his mental impairment. *See* Plaintiff's Brief at pp. 14-15. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, "findings with respect to a claimant's credibility 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (*quoting Kepler*, 68 F.3d at 391 (10th Cir. 1995)); *see* SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996) ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.").

Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

9

*Huston*, 838 F.2d at 1132 (*citing Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987)); *see* SSR 96-7p, 1996 WL 374186 at *2 (July 2, 1996). But "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," a "formalistic factor-by-factor recitation of the evidence" is not required. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Common sense should guide the review of an ALJ's credibility determination; technical perfection is not required. *See Keyes-Zachary*, 695 F.3d at 1166-67.

Here, the ALJ properly noted the following facts: (1) no treating or evaluating medical or psychiatric specialist has assessed Plaintiff as suffering a totally disabling psychiatric impairment; (2) mental status examinations have persistently shown Plaintiff to exhibit good psychiatric functions; (3) his primary care physician reported Plaintiff retains the ability to perform a wide range of psychiatric functions; (4) Plaintiff has independently participated in ongoing medical and psychiatric treatments, provided medical and psychiatric treatment histories, made medical and psychiatric treatment decisions, and accessed public benefits and facilities; and (5) Plaintiff has matured enough in judgment to no longer engage in the abuse of alcohol or illegal drugs. AR 19. In addition, according to information Plaintiff and his mother provided in the record Functional Reports, AR 170-76, 197-204, and Plaintiff's own hearing testimony, AR 27-54, Plaintiff has close relationships with his mother and son; lives in a duplex by himself; independently takes care of his personal grooming and other personal care needs; maintains his medications; takes care of his pets; drives; walks; uses public transportation unaccompanied; shops in stores; cooks full meals; performs light yardwork and household chores; uses a computer; instructs his son in the use of a computer; counts funds; reads; plays board games; maintains friendships; socializes frequently with family and friends; is able to pay attention for hours; and handles changes in routine fairly well. *Id.*

Plaintiff cites *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) and *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) for the proposition that the ability to complete daily activities is not inconsistent with a claim that a person cannot do substantial gainful activity. Both cases are distinguishable. In *Thompson*, the Tenth Circuit held an ALJ may not rely on "*minimal* daily activities" and "the '*sporadic* performance [of household tasks or work]'" as substantial evidence that a claimant does not in fact suffer disabling pain. *Thompson,* 987 F.2d at 1489 (emphasis added). Here, Plaintiff does not claim inability to work due to pain but due to a mental disorder, and the level of activity to which he and his mother attested goes well beyond minimal or sporadic. *Broadbent* likewise involved assessment of the credibility of a claimant alleging inability to work due to a physical, rather than mental, impairment. In that case, the Tenth Circuit held the occasional tasks and diversions the claimant admitted to doing were insufficient to discredit his claims of disabling pain where "[n]o less than five medical specialists have found that [his] condition is completely disabling," and evidence showed the claimant's "main problem has consistently been pain which becomes progressively worse after a few hours of even minimal amounts of physical activity." *Broadbent*, 698 F.2d at 412. Thus, Plaintiff's reliance on *Thompson* and *Broadbent* is misplaced.

Here, the ALJ properly set forth numerous, specific examples for discounting Plaintiff's subjective complaints. *See Qualls*, 206 F.3d at 1372. He closely and affirmatively linked his credibility determination to substantial evidence. *See Huston*, 838 F.2d at 1132. Common sense dictates the ALJ's credibility findings should not be disturbed.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Any objection must be filed with the Clerk of the District Court by March 1, 2016. Failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 16th day of February, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE